## Lynn v. Bullock.

(Decided November 12, 1920.)

## Appeal from Fayette Circuit Court.

1. Statutes—Constitutional Law—Section 51 of Constitution.—Section 51 is divided into two parts, one dealing with the title of the act and the other with the body of the act.

2. Statutes—Constitutional Law—Original and Amendatory Acts.—Sections in an old act or parts thereof may be repealed or amended by an original act.

3. Statutes—Constitutional Law—Meaning of Words "Conferred and Extended," in Section 51.—When a new and independent act repeals certain parts of an old act that confers on an officer or court certain duties and transfers them to some other officer or court it is not necessary that the new act should republish any part of the old act because the provisions of the old act are not extended or conferred by the new act.

4. Statutes—Constitutional Law—"Extending or Conferring"—Meaning of in Section 51.—If a new act should provide that the provisions of some former act, which was described merely by its title, should be made a part of it the same as if re-enacted, this would be extending and conferring the provisions of the old act in violation of section 51.

5. Statutes—Constitutional Law—Transfer of Powers or Duties From One Officer or Court to Another.—A new act may substitute an officer or court in the place of an officer or court vested with described duties by an old act without changing, in other respects, any part of the old act and without re-enacting any part of it.

6. Statutes—Constitutional Law—Title of Act—General Title.—A title that covers a subject in a general way will be sufficient and so will the body of the act if it is confined in a general way to the subject expressed in the title.

7. Statutes—Constitutional Law—Title of Act—Specific Not General Title.—Where a title specifically points out the nature of the legislation it is proposed to enact and the body of the act goes beyond the title and deals with substantial subjects and things outside of those described in the title, the title will be misleading and deceptive.

8. Statutes—Constitutional Law—Misleading Title.—Where the title of an act did not give any indication that county courts should have jurisdiction of the matters contained in the act, but the body of the act conferred on these courts jurisdiction, the title was misleading and the act invalid.

9. Statutes—Constitutional Law—Section 141 of Constitution.—An act that divides the counties of the state into classes and prescribes different jurisdiction for the county courts in the several classes

violates section 141, declaring that the jurisdiction of county courts shall be uniform throughout the state.

MILLER & MILLER for appellant.

BASKIN & VAUGHN, BLAKEY, DAVIS & LEWIS and MILLER & CHEVALIER, Amicus Curiae, for appellant.

J. KEENE DANGERFIELD for appellee.

RICHARD C. STOLL, SHACKELFORD MILLER, ALLEN P. DODD, JOHN L. WOODBURRY and R. L. NORTHCUTT, Amicus Curiae, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CARROLL— Affirming.

This suit was brought in the Fayette circuit court by Emma Lynn against Frank A. Bullock, judge of the Fayette county court, asking a writ of prohibition to prohibit him from taking jurisdiction of and hearing and determining a proceeding under a warrant issued by him against Emma Lynn charging her with the offense of contributing to the delinquency and dependency of her two minor children, which is an offense under the statute.

The circuit court dismissed the suit upon the ground that the act of 1920 depriving the county court of jurisdiction of proceedings like this was unconstitutional and therefore Judge Bullock had jurisdiction under the statutes attempted to be repealed by the act of 1920.

Previous to 1920 the legislature had passed three acts relating to dependent, neglected and delinquent children that may be found in sections 331d, 331e, 331f of the Kentucky Statutes. In each of these acts there was a section giving to the county courts of the several counties of the state exclusive jurisdiction of all cases coming within the terms and provisions of the act.

Two of these acts were approved on March 19, 1908, and the other was approved on March 23, 1910. The act of 1910 repealed the act of March 19, 1908, that is now section 331e of the statutes, and some question is made of the fact that the act of 1920 refers to this repealed act as an existing law, but this matter will not be again noticed as it is not material to the disposition of the case.

The title of the act of 1920 reads:

"An act to repeal subsection eight of section three hundred and thirty-one-d and subsection three of section three hundred and thirty one-g and the following words

in subsection two of section three hundred and thirty-one-e: 'The county courts of the several counties of this state shall have exclusive jurisdiction in all cases coming within the terms and provisions of this act' of the Kentucky Statutes (Carroll's one thousand nine hundred and fifteen edition), and to increase the jurisdiction of the circuit courts by adding jurisdiction of all cases, powers and matters coming within the terms and provisions of an act entitled 'An act fixing and defining the powers of the several county courts within this Commonwealth with reference to persons responsible for or directly promoting or contributing to the conditions that render a child dependent, neglected or delinquent, and providing how such powers may be exercised,' approved March nineteenth, one thousand nine hundred and eight, also of all cases, powers and matters coming within the terms and provisions of an act entitled, 'An act relating to children who are now or may hereafter become dependent, neglected or delinquent, to define these terms and fixing and defining the powers of the several county courts within this Commonwealth with reference to the care, treatment and control of such children, and to provide for the means whereby such powers may be exercised,' approved March nineteenth, one thousand nine hundred and eight, also of all cases, powers and matters coming within the terms and provisions of an act entitled 'An act to provide for the punishment of persons responsible for or directly promoting or contributing to the conditions that render a child dependent, neglected or delinquent,' approved March twenty-third, one thousand nine hundred and ten, and all acts amending said three acts.''

Putting this title in simple words. it first repeals the provision in the two acts of March 19, 1908, and the act of March 23, 1910, conferring on county courts exclusive jurisdiction of all cases coming within the terms and provisions of the acts; and, second, it gives to the circuit courts jurisdiction of all cases, powers and matters coming within the provisions of the two acts of March 19, 1908, and the act of March 23, 1910.

Reading the title one would naturally and reasonably conclude that the purpose of the act as expressed in the title was to take away from the county courts the jurisdiction conferred by the three prior acts and transfer this jurisdiction to the circuit courts, but an examination of the body of the act will disclose that it does not take away from county courts all jurisdiction in this class of cases.

The act contains five sections. In the first section it confers on circuit courts jurisdiction of all cases, powers and matters coming within the terms and provisions of the three prior acts, and then provides that:

"Whenever the circuit judge in districts where there is but one circuit judge shall be absent from the county or shall be disqualified by illness or other cause from performing the duties aforesaid, the county judge shall preside and act in his place during such absence or disability; and provided that in counties having two circuit judges, they and the county judge shall determine which one of said three judges shall preside and perform the duties prescribed by this act, and in case the judge performing the duties prescribed by this act shall be absent from the county or shall be disqualified by illness or other cause from performing the duties aforesaid, then one of the other judges shall preside and perform the duties prescribed by this act during such absence or disability, and in case two of said judges shall be absent from the county or shall be disqualified by illness or other cause from performing the duties aforesaid, then the remaining judge shall preside and act in their place during such absence or disability; and provided that in districts containing a population of more than two hundred thousand persons, the jurisdiction and powers granted by this act shall be performed by one of the judges of the civil branches of the circuit court. Which judges shall act and perform the duties prescribed by this act may be determined by the said judges of said civil branch of the court, and if they cannot agree then it shall be determined by lot. And in case the judge performing the duties prescribed by this act shall be absent from the county or shall be disqualified by illness or other cause from performing the duties aforesaid, then one of the other of said judges shall perform the duties prescribed by this act during such absence or disability, and if such circuit judges can not agree which one shall so act then the other judges not disqualified shall determine the same by lot. If all of the judges of the civil branches of the court shall be absent from the county or disqualified from acting, then the judge of the criminal branch of the court shall preside and act in their places during such absence or disability, and if all of the judges of the circuit court shall be absent from the county or disqualified from acting, then the county judge shall preside and act in their places during such absence or disability."

In section two provision is made for the distribution of these cases in circuit courts having three or more judges.

Section two and a half reads as follows: "The county courts of the state are vested with concurrent jurisdiction with the circuit courts of the state of all matters embraced within the terms of this act, and whenever the circuit judges shall be unable to perform the duties aforesaid the county judges, respectively, shall preside and act in the places of the circuit judges and the proceedings shall thereupon be in the county court."

Section three repeals the three sections in the prior acts that conferred exclusive jurisdiction on the county courts in this class of cases.

Section four repeals all acts and parts of acts in conflict with the act; and by section five it is provided that if any section of the act should be held invalid such invalidity should not affect any other section of the act.

It will be observed that the body of the act, after carrying out in section one the purpose expressed in the title to confer on circuit courts all powers coming within the terms and provisions of the three prior acts, further carries out in section three the purpose of the title to repeal so much of the three prior acts as conferred on county courts exclusive jurisdiction of the cases mentioned in these acts. But it does not stop with this.

We have in this state what might be called four classes of circuit court districts. The counties of Fayette and Campbell each compose one district and have one circuit judge; the county of Kenton composes one district and has two circuit judges; the county of Jefferson composes one district and has seven circuit judges; in the other counties of the state the districts are composed of more than one county and each district has one circuit judge.

Looking now to the provisions made by the act for the trial of what may be called juvenile cases it will be noticed that in counties composing a circuit district and having one circuit judge if he is absent from the county or disqualified the county judge shall act in his place, and this provision applies only to the counties of Campbell and Fayette; in counties having two circuit judges (Kenton being the only one), these two judges and the county judge shall determine by lot which one shall take jurisdiction of this class of cases, and if the one to whom the jurisdiction is assigned shall be absent or disqualified then one of the others shall act; that in districts compos-

ing one county and having more than 200,000 persons (Jefferson being the only one) the judges of the civil branches of the court shall determine among themselves which judge shall have jurisdiction in this class of cases, and if all of these are at any time absent or disqualified then the judge of the criminal branch of the court, and if he as well as the others is absent or disqualified then the county judge shall act; while in all the other counties of the state the county judge must act whenever the circuit judge is unable to perform the duties of the office, and this would mean that in the districts of the state that are composed of more than one county the county judge in each of the counties would practically have control of this class of cases, because the circuit judge would only be in each county in his district for the short period during the year when he was holding court therein excepting in the county where he lived.

The constitutionality of the act is assailed on several grounds, but we will confine the opinion to a consideration of the objection that it violates section 51 of the Constitution, reading: ''No law enacted by the general assembly shall relate to more than one subject, and that shall be expressed in the title, and no law shall be revised, amended or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revised, amended, extended or conferred shall be re-enacted and published at length,'' and section 141 reading: ''The jurisdiction of the county court shall be uniform throughout the state, and shall be regulated by general law, and, until changed, shall be the same as now vested in the county courts of this state by law.''

Section 51, as may readily be seen, is divided into two parts, one dealing with the title and declaring that no law shall relate to more than one subject and that shall be expressed in the title; the other, which relates to the body of the act, declares that no law shall be revised, amended or the provisions thereof extended or conferred by reference to its title only, and it is vigorously pressed that the title of the act of 1920 offends against both parts of this section.

Considering, first, the argument that the act violates the latter part of section 51 we are not able to agree with counsel who challenge the validity of the act on the ground that it attempts to extend and confer into the new act provisions of the old acts by a reference to their title.

The act of 1920 does not purport to be an amendatory act. There is no expression in the title indicating that its purpose was to amend or extend or confer the provisions of the old acts. It is an independent, original act. It leaves the former acts in full force and effect except that it repeals so much thereof as conferred exclusive jurisdiction on county courts.

Illustrative cases showing the difference in the application of section 51 to amendatory acts and original acts are: Purnell v. Mann, 105 Ky. 87; Herndon v. Farmer, 114 Ky. 200; Murphy v. City of Louisville, 114 Ky. 763; Commonwealth v. Reinecke Coal Mining Co., 117 Ky. 885; Prowse v. Board of Education, 134 Ky. 365; Marke v. Bloom, 141 Ky. 474; Flynn v. Barnes, 156 Ky. 499; Bryan v. Voss, 143 Ky. 423; Board of Penitentiary Commissioners v. Spencer, 159 Ky. 255.

Now the question is: may the legislature by an original act not purporting to be amendatory of any former act repeal so much of a former act as confers duties, powers or jurisdiction upon a described officer or court and transfer to another officer or court these powers, duties and jurisdiction, without setting out in the new act any part of the old or doing no more than to repeal certain parts of the old act and enact new provisions to take the place of the ones repealed? We think it can.

It will be observed that the latter part of section 51 provides that the provisions of a law shall not be extended or conferred by reference to its title only, and this prohibition was intended to correct a legislative practice in very general use before the adoption of the present Constitution. As said in Board of Penitentiary Commissioners v. Spencer, 159 Ky. 255, it was a common practice "to create, for example, a private corporation and merely provide that it should be vested with all the powers and privileges and rights and liabilities conferred on similar corporations, or on some like corporation named in the act, without attempting to set forth in the act the powers or privileges or rights or liabilities of the corporation created, or that were conferred on it by the reference to the other corporation.

"The word 'conferred' can be found in great numbers of local acts in which was conferred upon the corporation created the powers and privileges of some other corporation. Under this legislative custom, recognized as legiti-- mate and upheld as lawful under the old Constitution, it was also a common practice to amend or revise sections

of existing laws by adding certain words to the law, or by repealing certain words in the existing law, and to extend the provisions of an existing law by adding to it certain sections, without, in any instance, setting forth the law as it would appear when thus amended or revised.

"It can readily be seen that under this practice no person, by reading an act, the provisions of which had been extended or conferred in the manner indicated, could obtain any idea of the meaning or effect of it without reading it in connection with the old law, the provisions of which had been carried into the new law, by reference to the title of the old law; nor could any person, by reading an old law that had been revised or amended by adding to it certain words or taking from it certain words, understand the meaning and effect of the old law without reading it in connection with the new one that amended or revised it in this manner. And it was largely to prevent this deceptive and misleading manner of legislating, which afforded so many opportunities for fraud, as well as to make the laws more convenient and accessible, that this section was adopted."

In this connection it will be helpful to an understanding of the reasons that influenced the Constitution makers to prohibit a law from being "revised, amended or the provisions thereof extended or conferred by reference to its title only," to call especial attention to a few acts passed before the present Constitution in which old laws were made a part of new laws, merely by reference to the title of the old laws.

In the Acts of 1873, p. 120, the legislature enacted a law the title of which read: "An act to incorporate the Oak Ridge Turnpike Company in Mercer county," and in the body of the act, which only contained three sections, it was provided that "the provisions of the act and amendments thereto chartering the Harrodsburg and Cornishville turnpike road are made a part of this act by reference as far as not inconsistent."

In 1874 (see Acts, p. 448) the legislature enacted a law, the title reading, "An act to provide for the construction and completion of turnpike roads in Pendleton county." The act only contained three sections, and in one it was provided that "the provisions of an act entitled 'an act to provide for the construction and completion of turnpike roads in Harrison county,' approved March 25, 1872, except so far as they are repealed by an act passed at the present session of the legislature amendatory of the first

named act, be and they are hereby extended to the county of Pendleton.''

In 1886 (see Acts 1885-6,vol. 2, p. 224) the legislature enacted a law with the title ''an act to amend an act entitled an act for the benefit of the clerks of the county courts of Lewis, Clark and Montgomery counties,'' and in the body of the act, which contained only one section, it was provided that the act mentioned in the title should be amended, ''so as to embrace and include within its provisions the county of Marion.''

In 1867 (Acts of 1867, vol. 1, p. 166) the title of the act read: ''An act amending an act to punish certain trespasses in Jefferson, Scott and Mason counties, approved December 23, 1861, and extending its provisions to Henry, Bourbon and Franklin counties.'' In the body of the act, which contained only one section, after setting out the title of the old act, it was provided that the provisions of the old act ''be and the same are hereby extended to the counties of Henry, Franklin and Bourbon.''

In 1882 (Acts 1881-2, p. 1135) the legislature adopted an act the title reading: ''An act to incorporate the Nicholasville and Paint Lick Turnpike Road Company,'' and in the body of the act it was provided that ''the provisions of an act of 1850 incorporating the Nicholasville and Kentucky River Turnpike Road Company are hereby adopted and made a part of this act and all the powers, authority, rights and privileges are hereby conferred on the Nicholasville and Paint Lick Turnpike Road Company.''

Innumerable acts like these adopted before the present Constitution may be found in which the legislature, in place of enacting a new law by setting out its terms and provisions, contented itself with referring to the title of an old act, and by this reference making its terms and provisions a part of the new act, the same as if they had been set out in full therein.

It will further be noticed that in these acts the words ''revised, amended, extended and conferred'' are used indiscriminately and apparently interchangeably, the purpose in the use of each being the same, namely, to make as part of the new act the provisions in whole or in part of some former act merely by a reference to the title of the former act. This very general habit had created so much uncertainty and confusion in the law and made it so inconvenient and difficult to ascertain what the law was, that the new Constitution, in an effort to abolish this

bad practice, adopted the latter part of section 51, and if the act now under consideration attempted to do what was done in the acts we have mentioned it would plainly be obnoxious to section 51.

But this act does not attempt to put into effect by its own provision any part of any former act, as would have been the case if it had provided that the provisions of the former acts are hereby made a part of this act. It leaves in force all the provisions of the former acts, except such parts as it repealed.

And when the new act does no more than repeal certain parts of an old act that conferred on some officer or court prescribed powers and duties and transfers or confers these powers and duties on some other officer or court we do not think it necessary that the new act should also re-enact or republish any part of the old act, because the provisions of the old act are not extended or conferred by the new act in the meaning of the Constitution. The new act merely designates another officer or court to perform the duties and powers of the old act.

It seems very clear that the legislature by an act sufficient in its title and body might, by reference to the title of these old acts or the sections of the Kentucky Statutes in which they are contained, have amended them by striking out the sections that conferred exclusive jurisdiction on county courts and transferred this jurisdiction to circuit courts, and having the power to thus amend it had also the power to accomplish the same purpose in an independent, original act.

There is nothing in the Constitution that prohibits the legislature by an amendatory or original act from substituting some person, officer or court in place of the person, officer or court designated in a former act, or that prohibits it from conferring on the new named person, officer or court the power and authority to perform all the duties that were lodged in the person, officer or court designated in the old act, and this it may do without changing in any other respect the provisions of the old act. But, of course, when the legislature undertakes to do this the title of the act and the body of the act should indicate in such a manner as to make reasonably plain what it was intended to do, so that any person reading the title and the body of the new act could reasonably understand the change that had been made.

If, however, a new act should provide, for example, that the provisions of some former act which was de-

scribed merely by its title should be a part of it, the same as if re-enacted, this would undoubtedly be extending and conferring in the meaning of section 51 the provisions of an old act by reference to its title and violate section 51.

Taking up now the objection that the act of 1920 violates the first part of section 51, it may be said at the outset that if the body of the act had followed the title it would be unobjectionable, because the title merely repeals certain sections of former acts conferring jurisdiction on county courts and transfers this jurisdiction to circuit courts. It relates to only one subject and that subject is expressed in the title.

The defect is not to be found in the title but in the body of the act, which goes far beyond the subject expressed in the title.

There is no suggestion in the title that county courts shall have jurisdiction in administering the provisions of the acts referred to in the title; on the contrary, the title expressly takes all jurisdiction away from them. No person on reading the title could have the opinion that county courts would have any jurisdiction thereafter over the matters contained in the old acts, but when the body of the act is looked to it will be seen that the county courts are given partial jurisdiction in some counties and full concurrent jurisdiction with circuit courts in all of the others.

Under these circumstances it must be concluded that the subject of the act is not expressed in the title.

A title that covers a subject in a general way cannot be said to be defective or misleading if the body of the act is confined in a general way to the subject expressed in the title, because a reading of the title would convey the idea that the act relates to all matters germane to the subject mentioned in the title.

When, however, the title specifically points out the nature of the legislation it is proposed to enact and the body of the act goes beyond the title and deals with substantial subjects or things outside of those specifically described in the title, the title is misleading and deceptive, because the reader would reasonably and naturally suppose that the body of the act only related to the subject expressed in the title or germane thereto.

Illustrative cases supporting these two propositions and in which this court has held acts invalid because the title was defective in the respects indicated are: Henderson Bridge Co. v. Alves, 122 Ky. 46; Weimer v. Commis-

sioners Sinking Fund of Louisville, 124 Ky. 377; Board of Trustees v. Tate, 155 Ky. 296; Thompson v. Commonwealth, 159 Ky. 8; Burton v. Monticello Turnpike Co., 162 Ky. 787; Exall v. Holland, 166 Ky. 315; Bosworth, Auditor v. State University, 166 Ky. 436; Houston v. Boltz, Judge, 169 Ky. 640; Ogden v. Cronan, Sheriff, 171 Ky. 254; South v. Fish, 181 Ky. 349.

We are also of the opniion that the act violates section 141 of the Constitution providing that the jurisdiction of county courts shall be uniform throughout the state. This lack of substantial, not technical, uniformity is a prominent feature of the act. In all the counties of the state except four the county courts are given concurrent jurisdiction with circuit courts, and so in all these counties the county judge may reasonably be said to have jurisdiction in all cases arising under these acts, but in counties composing one district and having but one circuit judge (Fayette and Campbell being the only ones) the county judge can only act when the circuit judge is absent from the county or disqualified by illness or other causes from performing the duties imposed by the statute.

In counties composing one district and having two circuit judges (Kenton being the only one) the act leaves it to these two judges and the county judge of the county to determine which one of them shall have jurisdiction to hear and determine cases and questions arising under the statutes, so that in this county the whole jurisdiction might be put in the hands of the county judge or in the hands of one of the circuit judges.

In counties having seven judges (Jefferson being the only one) the act provides that these seven judges shall determine among themselves which one of them shall have jurisdiction to perform the duties imposed by the statutes.

It will thus be seen that the act divides the counties of the state into four classes and provides a different scheme of jurisdiction for each class.

Illustrative cases sustaining the view that the act violates section 141 of the Constitution are: Kilbourn, Judge v. Chapman, 163 Ky. 136; Stone v. City of Paducah, 120 Ky. 322; Commonwealth v. Hightower, 163 Ky. 441; Johnson v. Doublin, 167 Ky. 667.

Before closing this opinion we want again to express, as we have many times before, the profound sense of embarrassment we feel when compelled by our duty to declare acts of the legislature unconstitutional. This duty,

on account of hasty and ill-considered legislation as well as failure to observe constitutional requirements, is frequently put upon us much to our regret, because we have no disposition, indeed authority, to control or restrain the freedom of the legislative department in the performance of its lawmaking functions, except when it plainly transgresses the bounds of its authority as laid down in the Constitution.

We always presume that the legislature in the enactment of laws has kept within the limits of the Constitution, and it is only when the conflict between the statute and the Constitution is irreconcilable that we feel obliged to set aside the statute. When confronted by this alternative it is our plain and inescapable duty to uphold the Constitution.

Cases illustrating the reluctance of this court to declare acts unconstitutional are: City of Newport v. Fitzer, 131 Ky. 544; Com. v. International Harvester Co., 131 Ky. 768; Com. v. Hodges, 137 Ky. 233; Gardner v. Ray, 154 Ky. 509; Board of Penitentiary Commissioners v. Spencer, 159 Ky. 255; Clay v. Dixie Fire Insurance Co., 168 Ky. 315; Goodpaster v. United States Mortgaging Co., 174 Ky. 284.

Wherefore, the judgment of the lower court is affirmed.