## McKinney v. City of Owensboro et al.

June 20, 1947.

Sidney B. Neal, Judge.

Franklin P. Hays, Joseph R. Rubin, and Skaggs, Hays & Fahey for appellant.

Ridley M. Sandidge and Earl S. Winter for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Affirming.

Appellant, James H. McKinney, individually and as a citizen, property owner and taxpayer of the second-class City of Owensboro (hereinafter referred to as the City), representing himself and all other citizens similarly situated, brought this declaratory judgment action against the City wherein he attacked the constitutionality of an Act of the 1946 General Assembly Chapter 126, p. 331, and carried into the 1946 Statutes as KRS Chapter 58, and the validity of $550,000 revenue bonds proposed to be issued by the City on a public project consisting of a municipal auditorium, field house and swimming pool. The chancellor upheld the Act and declared the bonds to be valid revenue bonds which are not an indebtedness of the City.

The Act authorizes the acquisition, construction, maintenance, extension and improvement of property for public projects, and the renting and leasing thereof by governmental units and agencies, and the issuance of tax free revenue bonds payable solely from the revenue received from the project and any funds or tax revenues available for general purposes of the agency and not required by law to be devoted to some other purpose. KRS 58.020, 58.040 and 58.130. It is provided in KRS 58.070 that at or before the issuance of the bonds the governmental agency shall by order, resolution or ordinance set aside and pledge the income and revenue of the public project into a separate and special fund to be used in the payment of the cost, operation and depreciation thereof; and shall determine the amount of revenue necessary to be set apart and applied to the payment of principal and interest of the bonds, and the remaining proportion of the balance of the income shall be set aside to maintain the project. This section states the rents, royalties,

fees, rates and charges for the use of the project shall be fixed and revised from time to time so as to be sufficient to provide for the payment of interest upon all bonds and to create a sinking fund to pay the principal thereof at maturity, and to provide for the operation and maintenance of the project and an adequate depreciation account.

The yield of the bonds is limited to 6% and they shall not constitute an indebtedness of the county, city or political subdivision issuing them, which shall be plainly stated on the face of each bond, and the bonds shall not run longer than 25 years. KRS 58.040 and 58.030. The order, resolution or ordinance must recite that the public project is being undertaken under the provisions of this Act, KRS 58.020. Provision is made in KRS 58.060 that in case of default in the payment of interest or principal on the bonds that a receiver may be appointed by a court of competent jurisdiction with power to operate the project and to fix fees and collect rates sufficient to maintain same and to pay the indebtedness.

On April 22, 1947, the Board of Commissioners of the City duly passed an elaborate ordinance which fully met and complied with the provisions of the Act and authorized the issuance of municipal auditorium, swimming pool and field house revenue bonds in the sum of $550,000, bearing a maximum interest rate of 2.70% per annum, the last of which mature in 1971. Filed with the petition in this action is a copy of this ordinance and incorporated in the ordinance is a form of bond to be issued. The bond recites that the principal and interest thereof are to be paid out of the revenues received from the project, which is to be supplemented by any excess revenues received from the City's electric plant over and above what may be necessary to meet the operating cost, maintenance, depreciation and sinking fund requirements to retire the bonds upon the electric plant. It is provided in KRS 96.535 that such excess from the City's electric plant shall be paid into the general fund of the City. The ordinance and the bond recite that so long as any of the instant issue are outstanding no other bonds or obligations payable from the excess revenue of the municipal electric plant will be issued without mak-

ing same subject to the priority of the bonds we are now considering. The bond plainly states on its face that it is not an obligation of the City.

It is further recited in the ordinance and in the bonds that a minimum of $31,000 per year will be put into the sinking fund to meet the annual interest and the maturity of the bonds; and should there be a default in the payment of the principal or interest on any of the bonds, that the holders thereof may in a court of competent jurisdiction have a receiver appointed to administer the project and collect rates sufficient to operate it and pay the interest and principal of the bonds.

The chancellor sustained a general demurrer to the petition and when appellant refused to plead further, entered a judgment declaring the Act to be constitutional and the bonds to be valid revenue bonds but not an indebtedness of the City, and dismissed the petition. From this judgment McKinney appeals.

No reason is given in briefs why the Act is unconstitutional, and a careful study by us of the Act has revealed none. This Act is quite similar to one of 1926 authorizing cities of the second, third and fourth class to acquire water works through the issuance of revenue bonds, Chapter 133, p. 647, now KRS 94.160 et seq., and one of 1928 authorizing cities of the first class to construct bridges over the Ohio River through this character of bond, Chapter 74, p. 263 of the 1928 Acts, now KRS Chapter 181. These respective Acts were held constitutional and the bonds issued under them to be valid in City of Bowling Green v. Kirby, 220 Ky. 839, 295 S. W. 1004, and Klein v. City of Louisville, 224 Ky. 624, 6 S. W. 2d 1104, where the question was gone into thoroughly and discussed at length. Rather than repeat what was there written, it will suffice to make reference to those opinions where it was held that the bonds were not obligations of the city within the meaning of secs. 157 and 158 of our Constitution.

The only question we have here which was not disposed of in the Kirby and Klein opinions is whether or not an auditorium, swimming pool and field house is a "public project." That term is thus defined in KRS 58.010:

" 'Public project' means any land, buildings or

258

structures, works or facilities suitable for and intended for use as public property for public purposes or suitable for and intended for use in the promotion of the public health, public welfare or the conservation of natural resources, including the planning of any such lands, buildings, structures, works or facilities, and shall also include existing lands, buildings, structures, works and facilities, as well as improvements or additions to any such lands, buildings, structures, works or facilities.''

In Hannon v. City of Waterbury, 106 Conn. 13, 136 A. 876, 57 A. L. R. 402, it was held that a swimming pool and public baths constructed and operated by the city were municipal functions undertaken for the public benefit. It was said in Smith v. Fuest, 125 Kan. 341, 263 P. 1069, that a swimming pool constructed in a city park to be used for recreation was an appropriate public improvement for which bonds might be issued to pay therefor. Also see Yoes v. City of Fort Smith, 207 Ark. 694, 182 S. W. 2d 683, and LeFevre v. Board of Com'rs of City of Brookings, 65 S. D. 190, 272 N. W. 795. Likewise, it has been held that an auditorium constitutes an improvement for a public purpose. Anderson v. Thomas, 166 La. 512, 117 So. 573; Adams v. City of Durham, 189 N .C. 232, 126 S. E. 611. Therefore, we have no trouble under the definition given in KRS 58.010 and the cases just referred to in holding that the auditorium, field house and swimming pool the City proposes to construct is a public project.

We agree with the learned chancellor who tried the case that the Act is constitutional and that the bonds are valid and do not constitute an indebtedness against the City, therefore his judgment is affirmed.