## Martin County v. Cassady.

June 11, 1948.

Wm. R. McCoy, Jr. for appellant.

Peck, Shaffer & Williams for appellee.

OPINION OF THE COURT BY JUDGE LATIMER—Reversing.

The Fiscal Court of Martin County, for the purpose of constructing a new county jail under the authority of KRS 103.290 to 103.410, adopted an order providing for the issuance of $70,000 of Revenue Bonds. The bonds were dated June 1, 1948, in denominations of $1,000 each, bearing interest at the rate of 4%, payable semi-annually. They mature as follows: $6,000 on June 1st of each of the years, 1951 to 1960, inclusive; and $5,000 on June 1, 1961 and 1962, but redeemable on any interest payment date at 105 plus accrued interest.

The order provides also for a jail fund into which is paid a sum equal to the reasonable value of the use of the jail in the event the County elects to use and occupy the jail, the payment to be made from the current funds, and the amount to be equal to the reasonable value of such use and to be sufficient for maintenance, insurance, operation, and the debt service charges of the bonds. In addition to the above, the County is to deposit with the paying agent, which is the First National Bank of Cincinnati, out of its current unappropriated general fund the sum of $10,000 to be held as a reserve fund to guarantee the prompt payment of the principal and interest on the bonds.

The order provides that the bonds be sold at public

sale, and further provides for a statutory lien in favor of the bondholders and for the appointment of a Receiver in the event of a default by the County.

Appellee, as a citizen and taxpayer of Martin County, brought this action under the Declaratory Judgment Act, Civil Code of Practice, sec. 639a—1 et seq., claiming that the bond issue is invalid because it is violative of Section 157 of the Constitution. The cause was submitted to the court on the pleadings and the court held the bonds to be invalid. The matter is before this court upon appeal from that judgment.

In the first place it will be noted that in the order as adopted providing for the issuance of the Revenue Bonds, the Fiscal Court followed carefully the provisions of KRS 103.290 and following relative to the manner in which a Fiscal Court may acquire county buildings. It will further be noted that this act is substantially the same as Chapter 58 of KRS which deals with the acquisition and development of public projects by governmental units and agencies through Revenue Bonds, with this exception: That the property from which the revenues are derived is not conveyed to a private corporation or a governmental agency but is to be held in the name of the issuing authority. It might be said in passing that this exception has been held to be technically true even though provisions were made for conveyance to a governmental agency other than the issuing authority.

In Scott County Board of Education v. McMillen, 270 Ky. 483, 484, 109 S. W. 2d 1201, 1203, we said:

"* * * and, further, that it has the right to use such school funds and property to promote public education in such ways as it should, in the exercise of its judgment and discretion, deem necessary and proper, and that, looking to such end, it might convey school property to a holding corporation, although title to school property is technically vested in the commonwealth."

Chapter 58 of KRS was upheld by this court in McKinney v. City of Owensboro, 305 Ky. 253, 203 S. W. 2d 24. The general principle of Revenue Bonds such as these has been upheld by this Court in a number of cases. Morgan v. Fayette County Board of Education, 294 Ky. 597, 172 S. W. 2d 64, and Davis v. Board of

Education of City of Newport, 260 Ky. 294, 83 S. W. 2d 34.

If KRS 103.290 to 103.410 is unconstitutional it is because Section 157 of the Constitution is violated. Section 157 provides:

"* * * No county, city, town, taxing district, or other municipality, shall be authorized or permitted to become indebted, in any manner or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose; and any indebtedness contracted in violation of this section shall be void."

Now, viewing this act and the procedure of the Martin County Fiscal Court thereunder in the light of Section 157, let us try to put our finger on any violating portion. First, we note that $10,000 of heretofore unappropriated funds is to be placed with the paying agent to guarantee the payment of the principal and interest on the bond. There is no continuing indebtedness here. This amount is appropriated from unappropriated funds now on hand. It is to be invested in government bonds, and any interest earned thereon to be paid over to the County, and when and if the bonds are paid in accordance with the provisions therefor, the entire amount is to be returned to the County. In the McKinney v. City of Owensboro case above, we held that revenue from projects might be supplemented by any unencumbered monies in the general fund. There is no violation here.

It is provided in the bond that the bond shall be payable from a separate and special fund identified as the jail bond fund. The jail bond fund is to receive monies only from the use of the proposed building. The County agrees that in the event it elects to use the building a year at a time it will pay into this jail fund for the use of the jail a sum sufficient to maintain the building, to insure it, to pay the cost of operating, and to provide for amounts necessary to retire the bonds. It will be noted that it is from year to year that they agree to pay this amount if they elect to use the building, and this election so to use is not obligatory.

In Wheeler v. City of Hopkinsville, 245 Ky. 388, 53 S. W. 2d 740, 744, we said:

"But, if the ordinance and the plan only obligated the municipality to pay for whatever service it voluntarily appropriated from time to time without any obligation to continue such appropriation, then the only debt that would be created would be that incurred for the time during which the service was rendered. We have examined the ordinance in this case, as we did in the Williams one, supra, (Williams v. City of Raceland, 245 Ky. 212, 53 S. W. 2d 370) and have concluded that there is nothing contained therein, nor in any of the provisions of the proposed bonds, requiring the City of Hopkinsville to continue its use of the sewerage system for any definite period, leaving it to do for such time or times as it sees proper, and for which reason no invalid debt is created under the principles of the Beard opinion so as to prevent the carrying out of the proposed scheme."

Thus, we see since the County has the right to elect from year to year whether it will continue to use and occupy the jail, and after having so elected is obligated only for that particular year, there is here no continuing obligation and hence no violation of Section 157 of the Constitution.

It is significant that the bondholder may only look to the building and the revenue from the use thereof in satisfaction of its bonds and interest, and no further. A lien is created on the building and its contents in favor of the bondholder. In event of default provision is made for the appointment of a Receiver who would administer the building on behalf of the bondholders.

This Act may not be the wisest legislation in the world and might possibly open up avenues leading eventually to some regrettable situations, yet we are obliged to say that we do not see therein any violation of Section 157 of the Constitution. We conclude, therefore, that the bonds issued pursuant to the order of the Fiscal Court, under the authority of the statute above, would be valid.

Wherefore, the judgment is reversed with directions to enter judgment in conformity herewith.