## Anderson v. Wayne County.

June 7, 1949.

598

Joseph R. Rubin, Franklin P. Hays and Skaggs, Hays & Fahey for appellant.

W. C. Dabney for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SIMS—Affirming in part, reversing in part.

This declaratory judgment action was instituted by Wayne County against A. L. Anderson as a citizen and taxpayer of the county to test the validity of $90,000 revenue bonds authorized by the fiscal court under KRS Chapter 58 and KRS 103.290 to 103.410, to be applied on the building of a new courthouse. The chancellor declared the issue to be valid revenue bonds which are not an indebtedness of the county.

Filed with the petition as an exhibit is a resolution duly passed on February 17, 1949, by the fiscal court which recites that at the regular November 1948 election the voters of Wayne County approved an $80,000 bond issue for the purpose of building a new courthouse; that to erect this building an additional $90,000 is required; that the courthouse is a public project and under the authority of Chapter 58 and KRS 103.290 to 103.410 the county is empowered to acquire, construct and maintain the courthouse as a revenue producing undertaking and to issue bonds thereon payable solely out of the revenue received from the courthouse and from any tax revenues of the county available for its general purpose and not required by law to be devoted to some other purpose.

The resolution further recites that the bonds in denominations of $1000, numbered from 1 to 90, bearing interest at not exceeding 4% per annum, mature serially in various amounts from 1950 through 1965. That the Monticello Banking & Trust Company has agreed to act as trustee and paying agent in the issuance of the bonds, and a copy of the bond is incorporated in the resolution. A Courthouse Revenue Bond Account (sometimes re-

ferred to as the Sinking Fund) is created, into which the county agrees to pay the minimum amount of $10,000 during the twelve months preceding April 1st of each year; such payments are to be made out of the anticipated revenue of the county not necessary for any other purpose in equal installments of not less than $833.33 per month and deposited with the trustee. The county further agrees to deposit with the trustee an annual insurance premium of not exceeding $1500 in equal monthly installments of $125.

It is further provided in the resolution that the county is not bound to use the courthouse or to make the required payments for its use after the first year, but it shall have no right to use same except for such years as there is deposited in the required fund an amount at least equal to the sum which could be raised by a levy of 20c property tax. In case of default in the payment of interest or principal, provision is made for an appointment of a receiver to administer the courthouse on behalf of the county with authority to charge and collect rentals or fees sufficient to meet the outstanding bonds.

We upheld the validity of KRS Chapter 58 in McKinney v. City of Owensboro, 305 Ky. 254, 203 S. W. 2d 24, and the validity of KRS 103.290 to 103.410 in Martin County v. Cassady, 307 Ky. 728, 212 S. W. 2d 281. However, in the Cassady opinion the title of the Act, which became KRS 103.290 et seq., was not attacked, while here it is argued the title contravenes sec. 51 of our Constitution and we are asked to decide the question. So much of sec. 51 as is here applicable reads: ''No law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title.''

What is now KRS 103.290 to 103.410 was passed by the General Assembly in 1946 and may be found in the Acts of that year, Chapter 169, page 495, the title of which reads: ''An Act to authorize any city of the second, third, fourth or fifth class to acquire, establish, erect, maintain and operate a municipal hospital, and any county to acquire by purchase, construction or extension buildings and land to be used by said counties for courthouses or other proper county purposes and to issue bonds therefor, payable from the revenue of such buildings, and declaring an emergency to exist.''

We have several times written that the Constitution is not a technical instrument and should not be so construed as to defeat the substantial purpose of its adoption. Board of Penitentiary Commissioners v. Spencer, 159 Ky. 255, 166 S. W. 1017; Herold v. Talbott, 261 Ky. 634, 88 S. W. 2d 303. The purpose of sec. 51 in providing that no law shall relate to more than one subject, which should be expressed in its title, is to require that the title give to those interested fair and reasonable notice of the provisions of the Act. Lynn v. Bullock, 189 Ky. 604, 225 S. W. 733; Burton v. Mayer, 274 Ky. 245, 118 S. W. 2d 161. A county is a quasi municipal corporation and the title of the Act before us relates to but one subject, which is municipal corporations acquiring proper buildings to be used for public purposes and paying for same with revenue bonds, whether such building be a hospital for a city of the designated class, or a courthouse for a county. It can hardly be questioned but that the title gives fair and reasonable notice of the provisions of this Act. Therefore, the title does not contravene sec. 51 of our Constitution.

It is beyond cavil that a courthouse is a public project within the meaning of KRS Chapter 58, since in the McKinney case, 305 Ky. 254, 203 S. W. 2d 24, we held an auditorium, swimming pool and field house erected by a municipality was a public project. And in Hill v. City of Providence, 307 Ky. 537, 211 S. W. 2d 846, it was written that an auditorium-gymnasium to be constructed by the city and rented to the Board of Education, both of which were to use it, was a public project.

The instant case is parallel with Martin County v. Cassady, 307 Ky. 728, 212 S. W. 2d 281, where on a plan similar to the one here we approved a bond issue of $70,-000 by the county with which to erect a jail. Consequently, we approve the instant issue as being valid revenue bonds which are not obligations of the county and as not being in violation of sec. 157 of our Constitution.

The weakness in the Cassady case, 307 Ky. 728, 212 S. W. 2d 281, as well as in the one now before us, is that the county can derive no revenue from a jail or a courthouse which is for the sole use of the county. We

almost enter the realm of fiction when we say that a county jail or a courthouse will produce revenue from which the bonds are to be paid, especially when the $10,-000 to be paid into the bond fund comes each year from the general revenue of the county. It is in this respect that the Cassady case and the instant one differ from McKinney v. Owensboro, 305 Ky. 254, 256, 203 S. W. 2d 24 and Hill v. City of Providence, 307 Ky. 537, 211 S. W. 2d 846, where the buildings involved were capable of producing revenue. We approached quite near fantastic and imaginary ground when we wrote in Wheeler v. Board of Com'rs of City of Hopkinsville, 245 Ky. 388, 53 S. W. 2d 740, that the city was not obligated to continue using the sewerage system for an indefinite period, leaving it to do so for such time as it might deem proper. It is difficult to imagine a city giving up its sewerage system, a county its jail, or its courthouse as the county here claims it may. However, a majority of the court do not feel that the Cassady case should be overruled within less than a year after it was decided, and we uphold the bond issue in the instant case on what was written in the Cassady opinion, believing that all future public projects to be paid for with revenue bonds will have capacity to produce revenue.

The chancellor upheld a provision in the resolution that both issues, the $80,000 in voted bonds and the $90,-000 in revenue bonds, should be advertised for sale at the same time and that the proposed purchasers be required to bid on both issues together and at not less than par. This was error and this part of the chancellor's judgment must be reversed.

The two issues are entirely separate and distinct character of bonds, one is the obligation of the county and the other is not. They are no more alike than a horse and a cow although both belong to the category of hay-eating quadrupeds, just as both of these issues fall under the term "bonds." It is easily conceivable that one bidder may be interested in the county bonds but does not want to buy the revenue bonds, just as one farmer might desire a cow but have no need for a horse. It is unsound business to couple different objects and not let a purchaser buy the one of his choice but compel him to take both or none. To support its contention that the two issues should be sold as one, the county relies

upon Hunter v. City of Louisville, 208 Ky. 562, 271 S. W. 690; McDonald v. City of Lexington, 253 Ky. 585, 69 S. W. 2d 1065; Schumer v. Kenton County, 306 Ky. 667, 208 S. W. 2d 960. An examination of these authorities reveals they are not in point. In order not to be misunderstood, we will say there is no objection to advertising the sale of both issues for the same time, but the proposed purchaser will not be required to bid on these two separate issues together as if they were a single issue.

The judgment is affirmed in all respects except that part which ordered the two bond issues to be sold as one. A supplemental judgment will be entered in conformity with this opinion. The judgment is affirmed in part and reversed in part.

Judge Cammack, Judge Thomas and Judge Rees dissenting.

For the reason they do not think the $90,000 issue constitute revenue bonds within the contemplation of KRS Chapter 58, or KRS 103.290 et seq., nor do they think the bonds in question are valid under sec. 157 of our Constitution, Judges Cammack, Thomas, and Rees dissent.