J. R. BURKHOLDER et al., Appellants,

v.

CITY OF LOUISVILLE et al., Appellees.

Charles E. WOODMAN et al., Appellants,

v.

CITY OF LOUISVILLE et al., Appellees.

Court of Appeals of Kentucky.

March 4, 1955.

Leon J. Shaikun, James W. Stites, Louisville, for appellants.

S. M. Russell, Arthur W. Grafton, Charles W. Morris, Morris & Garlove, Wyatt, Grafton & Grafton, Louisville, for appellees.

WADDILL, Commissioner.

This is an appeal from a judgment validating a proposed issue of revenue bonds by the City of Louisville to finance improvements and additions to its waterworks system pursuant to the provisions of KRS, Chapter 58. Since the appellants, who were made parties defendant in this declaratory judgment action as representatives of the citizens, taxpayers and holders of general obligation bonds of the City of Louisville, have raised several questions concerning the legality of this fiscal adventure by the City, it is necessary, in order to consider and pass upon their objections, to look into the history of the Louisville Water Company to determine its present legal status with reference to whether the City has the right to fiscalize its water system under the provisions of KRS, Chapter 58.

On March 6, 1854, the legislature passed a special act creating a private corporation designated as the Louisville Water Company, which, under its charter, was au-

thorized to construct and operate a water system. Since the date of its creation it has been the only company engaged in furnishing water to Louisville and its inhabitants. Between the date this company was organized and the year 1895, the City of Louisville purchased all its stock which it still owns. In 1902 the legislature provided, in what is now KRS 91.150(6), that this stock should be a resource of the City's sinking fund. KRS 91.150 reads, in part, as follows:

"(1) The sinking fund shall be under the control and management of the commissioners of the sinking fund, and shall be held and sacredly used for the payment of the principal and interest of the bonded debt of the city. The board of aldermen may not pass ordinances to diminish the assets of the sinking fund until all of the debts of the city chargeable to the sinking fund are paid, but may pass ordinances to increase the assets of the fund.

\* \* \* \* \* \*

"(3) The entire income of the fund shall each year be set apart and applied to the payment of the interest and principal of all debts charged or chargeable to the fund, and to the cost of administration of the fund, and to no other use or purpose until the whole of the debts of the city are fully paid and satisfied, including the present and any future indebtedness of the city.

"(4) All bonds that constitute obligations of a city of the first class shall be made a charge upon the sinking fund of the city, except that no bonds shall be made a charge upon the sinking fund unless sufficient provision has been made, at the time of issuing the bonds or at the time of the charge, for the payment of interest and principal of the bonds. Bonds of the city made a charge upon the sinking fund shall be placed with and sold by the commissioners of the sinking fund, except as otherwise provided by law.

\* \* \* \* \* \*

"(6) Any stock owned by the city in the Louisville Water Company shall be a part of the resources of the sinking fund of the city."

In 1906 the legislature enacted what is presently KRS 96.230 through 96.310, establishing the Board of Waterworks of the City of Louisville, and awarded to this Board the possession, control and management of the property of the Louisville Water Company. This statute in pertinent part, reads:

"96.230.

"Whenever any city of the first class owns, through its commissioners of the sinking fund, all the shares of capital stock in any corporation engaged in supplying water to the city and its inhabitants, the city shall control, manage and operate the plant of the corporation, its franchise, and all its other property, in the manner provided in KRS 96.240 to 96.310. The provisions of KRS 96.230 to 96.310 shall not affect the status of the stock as part of the assets of the sinking fund."

"96.260.

"The board of waterworks shall be vested with all the authority and privileges, exercise all the franchises, and have possession, control and management of all the property, of the corporation of which the city owns all the stock. It may make contracts and sue and be sued, but only in the name of the corporation."

"96.300.

"The board of waterworks may borrow money in an amount not to exceed the gross receipts for the current year, for the purpose of meeting any of the obligations of the waterworks corporation and for current expenses of the board. In addition, whenever the board deems it expedient to provide for the refunding of any outstanding bonds of the waterworks corporation or the funding of its floating indebtedness, and after the commissioners of the sinking fund have by resolution

consented, the board may issue for either or both of those purposes the bonds of the waterworks corporation not to exceed in amount one million five hundred thousand dollars, and may secure the bonds by a mortgage upon the rights, privileges, franchises and property of the corporation. * * * The total bonded debt upon the property outstanding at any time shall not exceed one million five hundred thousand dollars."

During the years of these events the legal title to the physical properties of the water system was vested in the Louisville Water Company. In order to avoid the levy of ad valorem taxes, in 1908 the Louisville Water Company deeded all its property to the city of Louisville. The validity of this transfer of property was approved by this Court in Ryan v. City of Louisville, 133 Ky. 714, 118 S.W. 992. This deed (and subsequent deeds conveying properties later acquired) contained a proviso that the conveyance should in no way "interfere with the possession, management and control of said property * * * by the Board of Waterworks, or in any manner impair or restrict the powers of said Board * * *."

Thus we have the present organization of the waterworks system. The City of Louisville has legal title to the property. The stock of the water company is owned by the City and is pledged as a resource of the Sinking Fund. The control and management of the waterworks system is under the Board of Waterworks, and the Louisville Water Company still exists as a corporate entity. See, Board of Commissioners of Louisville Extension Water District v. Yumker, Ky., 239 S.W.2d 984; Dolan v. Louisville Water Co., 295 Ky. 291, 174 S.W.2d 425; Bell v. City of Louisville, 106 S.W. 862, 32 Ky.Law Rep. 699; Kirch v. City of Louisville, 125 Ky. 391, 101 S.W. 373; City of Louisville v. McAteer, 81 S.W. 698, 26 Ky.Law Rep. 425, 1 L.R.A.,N.S., 766.

From the date of its organization to the year of 1928, the entire earnings of the waterworks properties were expended for the improvement and expansion of the system. In 1928 and in some of the subsequent years, earnings of the water system not needed for the purpose of expansion were transferred to the Sinking Fund of the City. From 1949 to 1952 the receipts of the Sinking Fund from the waterworks system have been $3,647,000. There were outstanding, as of September 30, 1954, general obligation bonds of the City of Louisville totaling $65,538,000 and there are further bonds authorized but unissued, in the sum of $14,000,000. The Sinking Fund, on September 30, 1954, reported cash assets from all sources of $17,644,522.30.

The ordinances of the City authorizing these past bond issues vary somewhat in the proposed financing, but in each instance the general obligation bonds are made a "charge upon the sinking fund of the city." KRS 91.150(6).

By virtue of Ordinance No. 179, Series 1954, the City of Louisville has declared the waterworks system to be a public project, and proposes to issue $8,000,000 water revenue bonds to be financed by the revenues of the water system under the authority of KRS, Chapter 58. The commissioners of the Sinking Fund and the Board of Waterworks have passed resolutions approving the issuance of these bonds. The City also proposes to raise an additional $4,000,000 from the current revenues of the water system. The sum derived from these sources is to be used for the construction of capital improvements.

KRS, Chapter 58 (see, Acts of the 1946 General Assembly, Chapter 126, page 331) authorizes a governmental agency to acquire, construct, maintain, add to and improve any public project (as defined in the Act), and to issue revenue bonds payable solely from the revenue derived from the public project. This Act has many other comprehensive provisions which need not be set forth here. The constitutionality of this Act was upheld in McKinney v. City of Owensboro, 305 Ky. 254, 203 S.W. 2d 24. In that case we approved an ordinance of the City of Owensboro enacted

pursuant to KRS 58.010 et seq. which authorized the issuance of municipal auditorium, swimming pool and field house revenue bonds in the sum of $550,000 to be paid out of the revenues received from the project, and supplemented by any funds available for the general purposes of the agency which are not required by law to be devoted to some other purpose.

In Fayette County Fiscal Court v. Fayette County, 314 Ky. 595, 236 S.W.2d 455, we held in effect that KRS, Chapter 58, operated to enlarge the powers of the fiscal court within the confines of public projects, and gave approval to an expenditure for an incinerator, although such an expenditure was not within the powers granted to fiscal courts by KRS 67.080. And in Chrisman v. Cumberland Coach Lines, Ky., 249 S.W.2d 782, we held that the City of Cumberland could acquire, own and operate a bus transportation system by the issuance of revenue bonds under the provisions of KRS, Chapter 58. Thus we approach the initial question raised in this case by the appellant in the light of the broad and comprehensive construction we have given to KRS, Chapter 58.

The appellants maintain that the financing of the proposed bonds as authorized by Ordinance No. 179, is prohibited by KRS 96.230, 96.260, 96.300, and that these sections of the statute were not repealed by the subsequent enactment of KRS, Chapter 58.

■ It is unnecessary to decide in this case whether KRS, Chapter 58, has the effect of repealing those sections of KRS, Chapter 96, upon which appellants rely, because Chapter 58 is a new and an additional grant of power conferred upon governmental agencies to acquire, construct, maintain, improve and finance public projects as defined in the Act. Chrisman v. Cumberland Coach Lines, Ky., 249 S.W. 2d 782; Fayette County Fiscal Court v. Fayette County, 314 Ky. 595, 236 S.W.2d 455; McKinney v. City of Owensboro, 305 Ky. 254, 203 S.W.2d 24. Appellants concede that the City of Louisville and the Board of Waterworks are governmental agencies within the meaning of KRS, Chapter 58, and that the proposed improvement and additions to the waterworks system is a public project as defined in this Act. Therefore, we think the financing of the proposed bonds was fully authorized under the 1946 Act.

■ Appellants next contend that the ordinance in question diminishes the assets of the Sinking Fund in violation of KRS 91.150, and they assert that, as owners of general obligation bonds of the City, the proposed ordinance impairs their contract with the City. Kentucky Constitution, Section 19; Federal Constitution, Article 1, section 10. In support of this contention, the appellants cite Louisville Ordinance No. 353, Series 1940, which authorizes the issuance of $2,000,000 voted bonds which contain the following provision:

"This bond shall not be subject to taxation, * * *, and shall be a charge upon the Sinking Fund of said City."

The appellants state that at the time of making this 1940 contract one of the pledge resources of the Sinking Fund was the stock of the Louisville Water Company. KRS 91.150. Therefore, appellants maintain that the provisions of the present ordinance substantially alter "the organizational and financial protection" that was formerly afforded them.

The fallacy of this contention is that appellants assume that there is a legal obligation upon the Board of Waterworks (and the City) to pay the surplus earning of the water properties to the Sinking Fund. This assumption on their part is not supported by statute, or by ordinance, or by any contract they have entered into with the City. The bonds proposed to be issued under the present ordinance may have an effect on the amount of revenue available for immediate distribution to other agencies of the City by the Board of Waterworks, but whatever the effect may be upon the anticipated future surplus revenues of the waterworks system, no contract right of the City's general-obligation bondholders

is involved for the simple reason that the bondholders have no contract right to receive any of those future earnings. And inasmuch as the present assets of the Sinking Fund are not diminished or encumbered by the present ordinance, we find no merit in the objections raised upon this ground.

The appellants further urge that the ordinance in its details does not strictly and literally comply with KRS, Chapter 58. This objection was adequately answered by the Chancellor who held that there was a substantial compliance with KRS, Chapter 58, and that any variances therefrom in the ordinance were not material and were appropriate matters of contract between the City and its prospective bondholders. Cawood v. Coleman, 294 Ky. 858, 172 S.W.2d 548.

The appellants also maintain that the proposed issuance of the bonds creates an indebtedness of the City in excess of the constitutional limitation provided in sections 157 and 158 of our Constitution. As to this we observe that KRS, Chapter 58, the ordinance, and the bonds to be issued, all specifically provide that the bonds shall be paid from revenue derived from the operation of the "project" which in this instance is the water system. Therefore, we have no difficulty in reaching the conclusion that the bonds which are proposed to be issued do not constitute a debt within the meaning of sections 157 and 158 of our Constitution. McKinney v. City of Owensboro, 305 Ky. 254, 203 S.W.2d 24; Klein v. City of Louisville, 224 Ky. 624, 6 S.W.2d 1104; City of Bowling Green v. Kirby, 220 Ky. 839, 295 S.W. 1004.

There have been other questions raised, which have been considered, but we shall abridge them as they are wholly without merit.

The declaratory judgment entered by the learned Chancellor approving the ordinance which authorizes the issuance of the revenue bonds pursuant to KRS, Chapter 58, has been found to be correct and it is hereby approved.

Judgment affirmed.