## Dolan et al. v. Louisville Water Co. et al.

Sept. 28, 1943.

292

Marshall B. Hardy and Ralph H. Logan for appellants.

Charles W. Morris for Water Co. and Board of Waterworks.

Richard H. Hill and Lawrence S. Poston for City of Louisville.

Opinion of the Court by Judge Ratliff—Affirming.

The appellants, R. J. Dolan, James J. Langan, Walter Boldt, Louis W. Nord, Millie Nord English and George L. Garrett, as plaintiffs below, suing in their own behalf and other citizens, taxpayers, purchasers and consumers of water in the city of Louisville, alleged to be similarly situated and interested in the same question, brought this action in the Jefferson circuit court against the Louisville Water Company, a corporation; the Board of Waterworks of the Louisville Water Company, a corporate body, and the city of Louisville, a municipal corporation, seeking a decree and judgment of the chancellor enjoining the city of Louisville from collecting from the Louisville Water Company a rate or sum more than sufficient to pay maintenance and operating expenses of the water plant and the debts of the Louisville Water Company.

After setting out the corporate status, powers, authorities and duties of the respective defendants, plaintiffs alleged, in substance, that the city of Louisville is and was at all times mentioned the owner of all the shares of capital stock of the Louisville Water Company which at all times mentioned was engaged in supplying water to the city of Louisville and inhabitants thereof and that the city of Louisville, by and through its Board of Waterworks, controls, manages and operates the plant of the Louisville Water Company including its franchise and all other property and is vested with the power to contract and be contracted with and to sue and be sued in the name of the Louisville Water Company; that the Board of Waterworks is vested with power and authority and it is its duty to fix, make and collect reasonable sums or rates for the use or sale of water furnished to any individual, firm or corporation other than the city of Louisville.

In paragraph two of the petition plaintiffs alleged that between the dates of June 30, 1856, and April 19, 1907, the city of Louisville purchased and thereby became the sole owner of all the shares of the capital stock of the Louisville Water Company, a total of 12,751 shares, each share having the par value of $100, thus making the total investment of the city of Louisville in the Louisville Water Company the sum of $1,275,100, and that the shares of stock are deposited with the commissioners of the sinking fund of the city of Louisville and are held by the commissioners as a part of the sinking fund of the city. Plaintiffs further alleged that prior to the year 1923 and after the city of Louisville had purchased the capital stock of the Louisville Water Company, the water company reimbursed or paid to the city of Louisville all the funds used by the city in the purchase of the stock with interest thereon, and at the present time, and for many years, the city of Louisville has none of its funds invested in the water company and that all the assets accumulated and now owned by the water company have been paid in full by the inhabitants of the city of Louisville who are and were users or purchasers of water from the Louisville Water Company since the purchase by the city of Louisville of all of the capital stock of the water company. The petition further set out the sum the city had required the water company to pay into the sinking fund of the city since the year 1923; the sum held by the commissioners of the sinking fund for

the use and benefit of the water company and the balance as a profit to the city, followed with the allegation that a fair rate to the city on its investment in the capital stock of the water company should not exceed 6% per annum, and the sums collected and now being collected by the Board of Waterworks and the Louisville Water Company from the plaintiffs and all other users of water in the city are exorbitant and unreasonable. Plaintiffs further assert that the levy and collection of said assessment or tax for the use and benefit of the city is in violation of the Constitution of the state of Kentucky, Sections 171, 181 and 181a, and the Constitution of the United States and in violation of the taxing authorities and powers granted the city of Louisville by the laws of the state of Kentucky, and that neither the Board of Waterworks nor the water company has any power to fix, levy and collect taxes from the purchasers or users of water for the benefit of the city of Louisville.

The relief asked in the prayer of the petition was that an injunction be granted against the city of Louisville and the Louisville Water Company enjoining the city from collecting from the Louisville Water Company and enjoining the water company from paying to the city during the pendency of the action any sums of money more than a reasonable rate on the capital stock of the water company held by the city, and that any sum in excess of 6% be adjudged unfair and unreasonable, and that the money collected by the city from the water company for the years 1923 to 1939, inclusive, in excess of 6% on the capital stock be repaid by the city to the water company and that the latter refund the same to the plaintiffs and other users and purchasers of water; that the city and water company produce for inspection all their records pertaining to the management, control and operation of the water company; that the funds or sums of money now being collected by the water company in excess of reasonable cost of operation be impounded by the court and held for final distribution at the termination of the action; that the rates now charged and collected be adjudged unfair and unreasonable; that it be adjudged that any demand made by the city from the water company in excess of a reasonable rate on its capital stock is an attempt to levy a tax upon the plaintiffs; that an attempt to levy such tax through the Board of Waterworks in the name of the water company for the use and benefit of the city for purposes other than for

maintenance of the water company be held unconstitutional and void; and that the Board of Waterworks is not vested with the power to fix, levy and collect any such tax or taxes.

The plaintiffs moved the court for an order granting them the right to maintain and prosecute the action as a class action as provided in Section 25 of the Civil Code of Practice, and to grant a temporary injunction for the purposes indicated in the prayer of the petition. The court ruled that plaintiffs' cause of action, or alleged cause of action, was not a class action and denied them the right to prosecute the same as a class action and also denied a temporary injunction. Thereupon the defendants filed a special demurrer, motions to elect and to strike and to make more specific, and also a general demurrer. The chancellor sustained the special demurrer based on defect of parties plaintiff and also sustained the motion to require plaintiffs to elect which cause of action they would prosecute (it being contended by defendants that there were six "pretended" causes of action improperly joined,) and also to elect in whose name the action would be prosecuted and to strike from the petition the names of five of the plaintiffs named in the action and their respective "pretended" causes of action. The chancellor also sustained a general demurrer without leave to amend but granted plaintiffs thirty days to replead. At the expiration of the thirty days, plaintiffs having failed to plead further, the chancellor entered an order sustaining the general demurrer and dismissed the petition.

A large portion of briefs of respective counsel is devoted to the question of whether or not the plaintiffs should have been permitted to prosecute the action as a class action under the provisions of Section 25 of the Civil Code of Practice, and to the propriety or impropriety of the chancellor's ruling on the other motions referred to above. It is the rule that if the judgment of a court is warranted or may be sustained upon any ground or reason appearing in the record such judgment will be affirmed although the court may have reached its conclusions upon an erroneous reason. If the court properly sustained the general demurrer to the petition, it becomes unnecessary for us to pass upon other questions raised with respect to the court's ruling on the special demurrer and other motions.

Appellants base their case upon three grounds; (1) That the water rents are in reality a special tax being collected by a nontaxing agent of the government of the city of Louisville and is, therefore, prohibited by Sections 171, 181 and 181a of the Constitution of Kentucky; (2) that no authority is vested in the city of Louisville by the statutes of the state of Kentucky to demand and receive from the water company sums or revenue for purposes other than maintenance and operation of the water system and paying the debts of the Louisville Water Company, relying upon Chapter 922 of the General Assembly of Kentucky, approved March 10, 1854; and (3) that the water rents charged and collected were exorbitant and unreasonable.

Ground one presents no new question for this court. This precise question has been determined adversely to appellants' contention in numerous cases. In City of Henderson v. Young, 119 Ky. 224, 83 S. W. 583, wherein a similar question was involved, the court pointed out that a city has two classes of powers, one legislative and governmental, in the exercise of which it is a sovereignty and governs its people, and in the exercise of this class of powers the statute must be strictly construed. The other class of powers is conferred upon it for the purpose, not of government, but for private advantage to the city and its inhabitants, and in the exercise of these powers it is governed by the same rules that govern private individuals or corporations and may conduct it in the manner which promises the greatest benefit to the city and its inhabitants in the judgment of the city counsel, and it is not within the province of the court to interfere with the reasonable discretion of the counsel in such matters. This case was followed in the later cases of Flutmus v. City of Newport, 175 Ky. 817, 194 S. W. 1039; City of Mayfield v. Phipps et al., 203 Ky. 532, 263 S. W. 37, 39. In the last case cited the court said:

"* * * when a municipality in its private capacity owns and operates a public utility plant, it possesses the same rights and powers with reference to its management and control that a private individual owner would possess. * * *

"Upon the point raised that the water rents collected by the city are in reality *taxes* and therefore its council has no right to expend them for such purposes, we refer to the note to the case of Wagner

v. Rock Island, reported in 21 L. R. A. 519, wherein it is pointed out that such rents are not taxes in the usual signification of that term.''

Also, in Twitchell v. City of Spokane, 55 Wash. 86, 104 P. 150, 151, 24 L. R. A., N. S., 290, 133 Am. St. Rep. 1021, wherein the same question was involved, it was contended that the transfer of money from the water fund to the general fund was illegal; that the rates charged amounted to an excessive tax on water consumers; that the rates were excessive; and that the city had no right to sell water at a profit. The court denied all of these contentions and in the course of the opinion the court, quoting from Vol. 1, Farnham, Water and Water Rights, at page 855, Section 162, said:

'' '* * * The municipality, however, is not required to limit the rate to the actual expenses of furnishing the water, but may fix a rate which will result in some profit to it, which it may use to meet its other public needs.' * * *.''

''It is claimed that the rate charged amounts to an excessive tax on the community. But water rates are not taxes. The consumer pays for a commodity which is furnished for his comfort and use. The rule is stated in 30 Am. & Eng. Enc. Law (2d Ed.) p. 422, as follows:

'' 'Water rents paid by consumers are in no sense taxes, but are nothing more than the price paid for water as a commodity. The obligation to pay for the use of water rests either on express or implied contract on the part of the consumer to make compensation for water which he has applied for and received.' ''

See, also, to the same effect, Shirk v. Lancaster City, 313 Pa. 158, 169 A. 557, 90 A. L. R. 688; Wagner v. Rock Island, 146 Ill. 139, 34 N. E. 545, 21 L. R. A. 519; Rockford Savings & Loan Ass'n v. City of Rockford, 352 Ill. 348, 185 N. E. 623. Many other authorities of a similar nature might be cited but we deem it unnecessary to encumber this opinion by citation of cumulative authorities, since the question is too well settled to admit of doubt.

We now come to ground two, involving the question of whether or not the Louisville Water Company has any authority or right to collect water rents in excess of a

sum sufficient to pay operating expenses, maintenance,
and the debts of the water company; or, more precisely
stated, the question is whether or not the statute under
which the water company now is and has been operating
since the organization of the Louisville Water Company
expressly or by necessary implication limits the water
rents to the purposes stated above.  The Louisville
Water Company was organized as a private corporation
by a special grant or Act of the legislature, being Chap-
ter 507, Acts of 1853-54, approved March 6, 1854, en-
titled "An Act to incorporate the Louisville Water Com-
pany."  Sections 7 and 8 of the Act read:

"Sec. 7.  The said corporation is hereby em-
powered to sell the privilege of using the water
which may be conducted through its pipes or aque-
ducts to any corporation or person, and the said cor-
poration may make all reasonable rules and regula-
tions as to the manner and the times in which said
water may be taken and used.

"Sec. 8.  The city of Louisville may at any time
purchase of the said corporation its franchise and
all its personal and real property, by paying there-
for such a sum as, together with its receipts, will re-
imburse the whole amount expended, with an annual
interest of ten per cent; and from and after the
execution of the conveyance the said city of Louis-
ville shall have all the right and be subject to all the
duties in this act expressed as to said corporation."

Four days later, March 10, 1854, the same legislature
passed another Act (Chapter 922, Acts of 1853-54) enti-
tled "An Act to facilitate the erection of Water Works
in the city of Louisville."  Sections 1 and 2 of the Act
read:

"Sec. 1.  Be it enacted by the General Assem-
bly of the Commonwealth of Kentucky, That if a
majority of the votes cast upon the ordinance estab-
lishing water works in the city of Louisville shall be
in favor thereof, the said city may issue her bonds
for a sufficient amount to cover the cost of such
works, and the said works shall stand pledged to se-
cure the payment of the bonds, and the net proceeds
of the water rents shall constitute a fund to pay the
principal and the interest thereof, and shall be de-
voted to that purpose, and shall be deemed a suffi-

cient provision for said payment; and the general council may also make the interest a charge upon the sinking fund.

"Sec. 2. For the purpose of paying the expense of conducting and managing the water works, and paying for the water used for public purposes, the water board may assess and collect from time to time a water rent of sufficient amount, in such manner as they may deem most equitable, upon all the lands and tenements adjoining or bounded upon any street, alley, square, block, public ground, or premises through which the water pipe may be laid, such assessment to have the force of a city tax."

Appellants insist that the Act approved March 10, 1854, is the one under which the Louisville Water Company and the city of Louisville now is and have been operating since the passage of that Act, and that Section 2 of the Act limits the water rents to the purpose of paying the expenses of conducting and managing the waterworks as indicated by the language contained therein and for that reason the appellees are without authority to collect water rents more than sufficient for the purposes stated. If it be conceded that appellees are operating under the authority of the Act of March 10, 1854, there might be some merit in appellants' contention. But we think that the language of the two Acts (March 6 and March 10, 1854, respectively) and subsequent legislation, statutory and city ordinances, as well as various judicial opinions, show very clearly that appellees are operating the waterworks system under the authority of the Act of March 6, 1854. The Act approved March 10, 1854, gave the city the power to establish and maintain a waterworks system in its own name if it so desired, or the alternative of constructing a water system of its own if it did not choose to avail itself of the power set out in the Act of March 6, 1854; that is, to purchase the franchise of the Louisville Water Company and its personal and real property in the manner prescribed in Section 8 of the Act of March 6. However, the city did not exercise its right to purchase the franchise of the Louisville Water Company nor did it establish any waterworks system of its own as authorized by the Act approved March 10, 1854, but merely purchased the shares of stock of the Louisville Water Company which, by authority of subsequent Acts of the legislature (Sections 3010-8 and

3010-13, Carroll's Kentucky Statutes), are now owned and held by the sinking fund commission of the city for the payment of the principal and interest of the bonded debt of the city. Section 3010-13, Carroll's Kentucky Statutes, provides that:

> "There shall be added to the present resources of the sinking fund of said city the stock owned by her in the Louisville water company. The commissioners of the sinking fund shall have the power to purchase from individuals holding the same the certificates of stock held by said individuals in the Louisville water company, and when so purchased shall be held by said commissioners as a part of the sinking fund of said city.",

thus recognizing the existence of the Louisville Water Company. Also, in the case of Bell, Sheriff, et al. v. City of Louisville et al., 106 S. W. 862, 32 Ky. Law Rep. 699, decided in 1908, this court recognized the independent existence of the Louisville Water Company; that is, its legal entity separate and apart from its shares of stock owned by the sinking fund commission of the city of Louisville. The court said:

> " * * * Now, it is undoubtedly true from an economic standpoint that one who owns all of the stock of a corporation is really the owner of the corporate property; but this is not true in law, and especially for fiscal purposes. The corporation is a separate legal entity. It has a legal status which it can maintain in court or elsewhere entirely independent of the owners of its shares; * * *
>
> "The act of the General Assembly of Kentucky, approved March 6, 1906, entitled, 'An Act in relation to the control, management and operation of water works in cities of the first class' (Acts 1906, p. 52, c. 16), does not change the status of the water company towards the city. The changes made are merely as to the management of the water company, and the appointment of its board of directors; but the corporate entity remains, and the shares of stock are still owned by the sinking fund of Louisville."

Again, in Louisville Water Co. v. Clark, 143 U. S. 1, 12 S. Ct. 346, 36 L. Ed. 55, decided in 1892, the water company brought suit to enjoin the sale of its property for state and county taxes. The circuit court granted

the injunction and on appeal to this court the order of the circuit court was reversed and the water company appealed to the Supreme Court. The Supreme Court, in affirming the judgment of this court, discussed and reviewed the legislative history of the Louisville Water Company from its incorporation in 1854 down to 1892 and specifically discussed various Acts of the Kentucky Legislature during that period which amended the char-. ter of the Louisville Water Company, but no reference is made in that opinion to the Act of March 10, 1854.

It may be further noted that an Act approved January 20, 1860, provided:

"That an act to incorporate the Louisville Water Works Company, approved March 6, 1854, be and the same is hereby renewed and amended so as to allow said company such other and further time as said company may require to complete said work and make all extensions that the further growth of the city of Louisville may from time to time render necessary."

Also, an Act approved February 28, 1867, amended the Act of 1854 incorporating the Louisville Water Company so as to increase the capital stock of the water company and authorized the city to purchase such stock. In 1902 (sec. 3010-12, Carroll's Ky. Statutes) the legislature transferred the stock in the water company from the city of Louisville to the sinking fund. If the purchase of the shares of stock of the water company by the city of Louisville placed the city within the shoes of the Louisville Water Company so as to bring the operation of the waterworks system within the purview of the Act of March 10, 1854, it is indeed singular that the various court opinions and legislative Acts subsequent to 1854 made no reference to that Act. All these Acts and opinions refer to the March 6, 1854, Act *incorporating the Louisville Water Company*. The Act of March 10, 1854, did not purport to incorporate the Louisville Water Company but merely authorized the city to establish a waterworks system of its own which, as we have already noted, it failed to do.

We conclude, therefore, that the Louisville Water Company now is and has been since its incorporation pursuant to the Act of March 6, 1854, a distinct corporate entity separate and apart from the city of Louisville

and under authority of Section 7 of the Act the water company has the legal right to contract with the board of waterworks of the city to furnish the city and its inhabitants with water, and the courts have no right to interfere with the price or rates agreed on between the parties so long as such rates are not exorbitant or unreasonable. Twitchell v. City of Spokane, supra.

Appellants insist, however, that the petition charges unreasonable and exorbitant rates charged for water and that they are entitled to relief as to that phase of the case, if nothing more. The petition merely alleges that the rates are exorbitant and unreasonable but does not set out the rates charged, which allegation is more or less a conclusion of the pleader, apparently based on the sum of money originally invested by the city and that the rates charged for water yield a sum in excess of legal rate of interest on the original investment. In the absence of any allegations showing the rates charged, the value of the property used and useful in the public service, and perhaps other facts which might be helpful in determining whether or not the rates are unreasonable, we do not think the petition stated a cause of action on that phase of the case. It appears that the chancellor sustained the general demurrer on the grounds that the water rents are not a tax; the city, by its board of waterworks, has the right to contract with and purchase water from the water company at a rate sufficient to yield a profit to the city, and the petition failed to state facts sufficient to show unreasonable and exorbitant rates. We think the chancellor was correct. These conclusions make it unnecessary to pass upon other questions raised.

Wherefore, the judgment is affirmed. Whole court sitting.