APARTMENT AND OFFICE BUILDING
ASSOCIATION OF METROPOLITAN
WASHINGTON et al., Appellants,

v.

DISTRICT OF COLUMBIA et
al., Appellees.

No. 12917.

District of Columbia Court of Appeals.

Argued Oct. 12, 1978.

Decided May 22, 1980.

Jerome S. Wagshal, Washington, D. C.,
with whom Ronald L. Ogens, Washington,
D. C., was on briefs, for appellants.

Leo N. Gorman, Asst. Corp. Counsel,
Washington, D. C., with whom Louis P.
Robbins, Acting Corp. Counsel, Washington,
D. C., at the time brief was filed, and
Richard W. Barton, Deputy Corp. Counsel,
Washington, D. C., were on brief, for appellees.

Before KERN, NEBEKER and MACK,
Associate Judges.

MACK, Associate Judge:

In this challenge to rate-making by the
District of Columbia City Council, appellants seek reversal of the judgment of the
trial court granting appellees' motion to
dismiss a complaint pursuant to Super.Ct.
Civ.R. 12(b) or, in the alternative, to enter
summary judgment pursuant to Super.Ct.
Civ.R. 56. We affirm.

Appellant, Apartment and Office Building Association of Metropolitan Washington, is a nonprofit corporation comprised
of numerous owners and managers of
apartment houses, office buildings and other rental-type properties. The other appellants are a representative group of ratepayers of the District of Columbia water and
sewer service. Appellants commenced this
action to enjoin the city[1] from further collection of the fiscal year (FY) 1977 water

---

1. The other defendants were then-Mayor Walter Washington, the Director of the District of Columbia Department of Environmental Services, and the members of the Council of the District of Columbia.

and sewer rates and to recover alleged over-charges made pursuant to the FY 1976 and 1977 water and sewer rates. The appellees moved to dismiss or, in the alternative, for summary judgment. Pleadings, affidavits, depositions, answers to interrogatories, briefs and other documents were filed by both parties.[2] After a hearing, the trial court "[u]pon consideration of the motions, the memoranda of points and authorities filed by the parties in support thereof and in opposition thereto and the entire record" ordered dismissal, alternatively granted appellees' motion for summary judgment, and denied appellants' motion for a preliminary injunction.

■ At the outset we reject appellants' argument that the trial court's ruling was based *solely* upon jurisdictional grounds.[3] In view of the grant of summary judgment, it is clear that the court also held that no genuine issue of fact existed and that appellees were entitled to judgment as a matter of law. *Turner v. American General Corp.*, D.C.App., 392 A.2d 1005 (1978); *Burch v. Amsterdam Corp.*, D.C.App., 366 A.2d 1079 (1976). *See* Super.Ct.Civ.R. 56(c). Our review of the record convinces us of the soundness of such ruling.[4]

Reduced to bare essentials, the primary question is whether the City Council exceeded its statutory authority in establishing water and sewer rates for FY 1976 and 1977. The water rates were enacted pursuant to D.C.Code 1973, § 43–1520c:

The Council of the District of Columbia is authorized from time to time to fix the rates charged by the District for water

and water services furnished by the District water supply system, at such amount as the Council, on the basis of a recommendation made by the Mayor of the District of Columbia, determines *is necessary to meet the expense to the District of furnishing such water and water services.* [Emphasis added.]

The corresponding section pertaining to sewer rates is set out in D.C.Code 1973, § 43–1606(b):

Notwithstanding the provisions of subsection (a), the District of Columbia Council is authorized, in its discretion, from time to time to establish one or more sanitary sewer service charges at such amount as the Council, on the basis of a recommendation made by the Mayor, finds it necessary *to meet the expense to the District of furnishing sanitary sewer services, including debt retirement.* [Emphasis added.]

Presumably the challenged rates are said to be unreasonable and arbitrary for the reason that they are in excess of charges necessary to meet the expense to the District of Columbia of furnishing such water and sewer services. The challenge does not rise to the level of affording protection against a motion for summary judgment.

The facts show that, prior to the FY 1976, the District's water rate was $8.75 as a semi-annual minimum for the first 3,600 cubic feet and 19 cents per 100 cubic feet thereafter. The sewer rate was 98 percent of the water charge. In FY 1976, the above schedule was continued with two changes:

---

**2.** On this record we are not persuaded that discovery was improperly denied.

**3.** Super.Ct.Civ.R. 12(b) states in relevant part:

If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, *the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56,* and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

**4.** We also note that the trial court's alternative disposition in dismissing is clearly supportable on this record. Municipal ratemaking is a legislative function; in the absence of a clear showing that the rates are excessive, unreasonable or discriminatory and the action of the municipality illegal and arbitrary, the courts may not interfere. *Fort Collins Motor Homes, Inc. v. City of Fort Collins*, 30 Colo.App. 445, 450, 496 P.2d 1074, 1077 (1972); *Barr v. First Taxing District of the City of Norwalk*, 151 Conn. 53, 59, 192 A.2d 872, 875 (1963); *Dolan v. Louisville Water Co.*, 295 Ky. 291, 296, 174 S.W.2d 425, 428 (1943); 12 E. McQuillin Municipal Corporations § 35.37a (3d ed. 1970); 94 C.J.S. *Waters* § 289 (1956).

(1) the rate per 100 cubic feet after the first 3,600 cubic feet was raised from 19 cents to 30 cents and (2) the sewer charge became 90 percent of the water charge. In FY 1977 semi-annual minimums were eliminated. The water rate was raised to a flat rate of 39.4 cents per 100 cubic feet of water consumed and the sewer charge was raised to 44.8 cents per 100 cubic feet.

The rate schedules were adopted by the D. C. Council under the express power to fix rates for the purpose of the "maintenance, management and repair of the system of water distribution"[5] and to meet the expense of furnishing sanitary sewer services, including debt retirement.[6] Thus, on January 13, 1976, Mayor Washington announced his proposed budget for the District of Columbia for FY 1977 which included proposed items for water and sewer services. The FY 1977 budget items were submitted to the Committee on Finance and Revenue of the District of Columbia Council and were detailed in public hearings on January 19 and 20, 1976. The water and sewer rates were approved as proposed by the mayor but were conditioned upon the Council's determination that the rates had been properly justified by the mayor. The Council ordered a two-part study by the Public Service Commission and a study by the People's Counsel. After the mayor presented to the Council additional information in support of the proposed FY 1977 water and sewer rates, the Chairperson of the Public Service Commission stated that while the Commission could not specifically endorse the new rates, she recommended the adoption of the new rates rather than continuation of the old rates which she felt would lead to a significant under-recovery of costs. After the Finance and Revenue Committee gave a favorable recommenda-

tion, the D. C. Council voted by resolution that the FY 1977 water and sewer rates were justified and would take effect on July 1, 1976. Pursuant to D.C.Code 1976 Supp. III, § 47–224, the Revenue Act of 1976, containing the new water and sewer rates, was submitted to Congress in May of 1976 for a 30-day review in accordance with § 602 of the District of Columbia Self-Government and Governmental Reorganizational Act, Pub.L.No. 93–198, 87 Stat. 774 (1973), codified at D.C.Code 1978 Supp., §§ 1–121 to –171 (the Home Rule Act).

Against this background of legislative activity, and the presumption of regularity that flows therefrom,[7] appellants have advanced no convincing allegations to seriously challenge the reasonableness of the rate structure. They point in an isolated context to ambiguous or conclusory expressions advanced during the course of the legislative process or surfacing in advisory reports submitted after the final action on the new rates—reports directed at improving procedures. It is clear, however, that the determination of a reasonable rate depends largely upon the circumstances of the particular case. *Town of Vernon v. Public Utilities Commission*, 30 Conn.Sup. 36, 41–42, 318 A.2d 121, 125–26 (1971).[8] And we are not told specifically here in what respect the rates are unreasonable.

On the other hand, the appellees have established that there is some reasonable basis for the increased rates. The record shows that the increases were mandated by four factors: (1) mandatory increases in salaries of the Department of Environmental Services' employees; (2) sharply increased costs relating to materials and energy needed to operate and maintain the system; (3) the assumption of responsibility for maintenance of water and sewer lines

5. D.C.Code 1973, § 43–1522.

6. D.C.Code 1973, § 43–1606(b).

7. There is a strong presumption that a municipality in exercising its legislative discretion will act within the bounds of reasonableness. *See Kliks v. Dallas City*, 216 Or. 160, 173, 335 P.2d 366, 372 (1959); *Faxe v. City of Grandview*, 48 Wash.2d 342, 294 P.2d 402 (1956).

8. *Town of Vernon v. Public Utilities Comm'n, supra*, involved the challenge of a rate order of a public utilities commission granting an increase in rates of approximately 156 percent, the court upheld the order on the basis that the increase was reasonable and justified due to the expense of installing and operating a water treatment and filter plant.

between the street mains and the properties served; and (4) the development, operation and maintenance of the new Blue Plains Waste Water Treatment facility. Official estimates (obviously made in light of the mandate of the statute) predicted a revenue deficit rather than a profit and year-end figures have borne out the fact that expenditures did exceed revenue. In addition, the rate schedules, after increases, have been shown to be less than those in areas immediately adjacent to the District of Columbia. One of the factors in a determination of whether rates are reasonable is evidence of like services under similar conditions. *Lewis v. Mayor and City Council of Cumberland*, 189 Md. 58, 67, 54 A.2d 319, 324 (1947); *Rankin v. Chester Municipal Authority*, 165 Pa.Super. 438, 448, 68 A.2d 458, 463 (1949). The massive record below of affidavits and exhibits show that there was a need for the rate increase and that the amount of increase was reasonable under the circumstances.

Upon the record presented to us, we can not say that it was error for the trial court to have concluded that the appellants had failed to establish a prima facie case and that the appellees were entitled to judgment as a matter of law.

*Affirmed.*