RENDERED: AUGUST 29, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0725-MR

DAVID WHITE                                                          APPELLANT

APPEAL[1] FROM JEFFERSON CIRCUIT COURT
v.        HONORABLE LAUREN ADAMS OGDEN, JUDGE
ACTION NO. 14-CI-500131

AIESHA WHITE (NOW COLE)                                    APPELLEE

OPINION
AFFIRMING IN PART,
REVERSING IN PART,
AND REMANDING

** ** ** ** **

BEFORE: CALDWELL, ECKERLE, AND McNEILL, JUDGES

ECKERLE, JUDGE: Appellant, David Allen White, Jr. ("White"), seeks relief

from the orders of the Jefferson Family Court modifying a prior custody decree,

granting sole parental custody to Appellee, Aiesha White (now Cole) ("Cole"), and

---

[1] Although this case involves custody, it was not designated as an "expedited" appeal.

holding White in contempt for violating prior timesharing orders. Without an Appellee brief, and in light of White's uncontroverted and compelling arguments, we cannot affirm the Family Court's modification of joint custody or grant of sole custody to Cole. However, the Family Court's findings are sufficient to support its conclusion that White committed willful violations of the Family Court's prior timesharing orders. As a result, the Family Court did not abuse its discretion by holding White in civil contempt. Hence, we affirm in part, reverse in part, and remand for entry of a new order reinstating joint custody.

## I. Factual and Procedural History

White and Cole were married on June 28, 2008. One child, D.W. ("Child"), was born of the marriage, in August 2011. In February of the following year, the parties separated. In January 2014, Cole filed a petition for dissolution of the marriage, and, on July 14, 2014, the parties entered into a marital settlement agreement. In pertinent part, the agreement provided that the parties would share joint custody and equal timesharing of Child. On August 14, 2014, the Family Court issued a decree of dissolution incorporating the parties' agreement.

Over the next nine years, the parties frequently disagreed about custody and timesharing. These disputes led the Family Court to appoint Pashens Fitzpatrick ("Fitzpatrick") as Friend of the Court ("FOC") in November of 2020. In 2022, Cole filed motions to hold White in contempt for failure to comply with

various orders regarding parenting of Child, and to compel White to submit to a psychological assessment. White filed motions to modify parenting time, dismiss the FOC, and appoint a parenting coordinator.

On December 7, 2022, the Family Court issued findings of fact, conclusions of law, and an order on the pending motions. In its findings, the Family Court stated that the parties "have disparate parenting styles" and "have a highly dysfunctional co-parenting relationship." Order, December 7, 2022, p. 2, Record on Appeal ("ROA") at 1004. The Order stated that, at various times, both parents unilaterally withheld Child from parenting time with the other. The parents frequently disagreed over Child's medical care, education, and extra-curricular activities.

The Family Court also stated that White had been investigated for abuse of Child, which led to a suspension of his parenting time. Following that investigation, and after additional therapy and family counseling, the Family Court had allowed White to resume unsupervised visitation in April 2021, subject to the recommendations of the FOC, who suggested expansion of White's timesharing, with a goal of eventually resuming equal timesharing. Consequently, the FOC opined that Child should continue living primarily with Cole, with White having expanded parenting time during the week.

Based on these recommendations and the other evidence of record, the Family Court modified the parenting schedule. The Family Court increased White's parenting time by one day per week and set a schedule for holidays and extended school breaks. Specifically, the Family Court gave White parenting time based on a two-week schedule as follows: with White exercising parenting time from Tuesday after school until Friday after school during the first week, and from Wednesday after school until Sunday at 6:00 p.m. during the second week.

The Order also established a set holiday schedule, with White and Cole alternating parenting time on Christmas and spring break. Of significance to this appeal, the Order provided that Cole would exercise parenting time on Christmas Day in even years, and over spring break during odd years, beginning, "Monday morning, and end[ing] the following Sunday at 6:00 p.m., for a total of seven days." *Id*. at 13, ROA at 1015. In addition, the Order emphasized specifically that "**[*n*]*either party shall unilaterally modify this schedule, including exchange times, except in the event of an emergency*.*" *Id.*, p. 14, ROA at 1016 (bold and underline in original).

The Family Court denied Cole's motion to hold White in contempt for prior failures to comply with the parenting schedule. But the Family Court cautioned that "[p]rospectively, the parties are to strictly comply with the parenting

schedule as set forth above. Failure to do so may subject them to contempt proceedings." *Id.*, pp. 17-18, ROA at 1019-20.

On December 19, 2022, the Family Court issued an amended order modifying the parenting schedule, providing that White's parenting time would begin on Wednesday (versus Tuesday) after school until Friday prior to school (versus after school) during the first week, and Thursday (versus Wednesday) after school until Monday morning (versus Sunday evening) during the second week. The Family Court also adjusted the timesharing schedule for Christmas, with Cole receiving timesharing from 6:00 p.m. Christmas Eve until 6:00 p.m. Christmas Day 2022.[2]

On February 6, 2023, White filed a motion to modify the spring break schedule to allow for a planned cruise. The parties appeared before the Court on February 13, 2023, at which time the Court denied the motion. On March 21, 2023, David filed a second motion to modify the spring break schedule, and the Family Court again denied the motion.

While these matters were pending, Cole filed a motion stating that the parties' disputes had grown worse. Cole alleged that her calls with Child had been blocked while White had timesharing. Cole also alleged that White failed to

---

[2] On January 20, 2023, White filed a notice of appeal from the December 19, 2022, Order. *David Allen White Jr. v. Aiesha Cole*, No. 2023-CA-0261-MR. On June 7, 2023, this Court dismissed that appeal as untimely.

comply with the timesharing schedule for Christmas. She further stated that the FOC had expressed concerns about the effect of these disputes on Child. Consequently, Cole moved to permit phone calls while White had timesharing and to appoint a guardian *ad litem* ("GAL") for Child. Cole also made an oral motion, supplemented by a written motion on April 10, 2023, to hold White in contempt for failure to abide by the timesharing schedule. White did not request sole custody. The Family Court set a hearing for July 31, 2023, on the contempt issue.

Before that hearing could occur, on June 12, 2023, White filed a motion requesting that the Family Court hold Cole in contempt, replace the FOC, and address other issues concerning the co-parenting arrangement. On July 31, 2023, the parties appeared for the scheduled hearing. However, the Family Court continued the hearing due to the withdrawal of Cole's counsel. At this point, both White and Cole were proceeding *pro se*, as White's counsel had withdrawn several months earlier.

On August 30, 2023, the Family Court denied White's June 12 motion for a new FOC and different parenting arrangements. In November 2023, White filed a new motion to hold Cole in contempt. On February 9, 2024, the Family Court eventually held a hearing on the contempt motions.

Following the hearing, the Family Court issued an order on February 19, 2024. First, the Family Court found White in contempt for his violations of the

timesharing schedule for Christmas 2022 and spring break 2023. The Family Court found that White, without good cause, violated the Court's order by failing to return Child for Christmas 2022 and the first portion of spring break 2023. The Family Court directed White to pay Cole $1,000 within ten days or, if he failed to do so, to serve seven days in jail. Second, the Family Court denied White's motion to hold Cole in contempt, stating that he failed to identify the dates and the specific provision of the order allegedly violated. And third, the Family Court granted sole custody to Cole, without her request, and it set aside the parents' long-standing agreement to joint custody. It concluded that such a modification was appropriate because White was unable or unwilling to abide by the terms of joint custody.

Following entry of this order, White filed a motion to alter, amend, or vacate pursuant to Kentucky Rule of Civil Procedure ("CR") 59.05.[3] On May 15, 2024, the Family Court amended certain findings and addressed the issues raised in White's motion, but otherwise denied relief. This appeal followed. Additional facts will be set forth below as necessary.

## II. Cole's Failure to File a Brief

We first note that Cole failed to file a responsive brief in this appeal. In such an event, the Kentucky Rules of Appellate Procedure ("RAP") provide as follows:

---

[3] At this point, White was represented by his current counsel.

> If the appellee's brief has not been filed within the time allowed, the court may (a) accept the appellant's statement of the facts and issues as correct; (b) reverse the judgment if appellant's brief reasonably appears to sustain such action; or (c) regard the appellee's failure as a confession of error and reverse the judgment without considering the merits of the case.

RAP 31(H)(3). This Court has the discretion to determine the appropriate penalty for failure to follow its rules. *St. Joseph Catholic Orphan Soc'y v. Edwards*, 449 S.W.3d 727, 732 (Ky. 2014). Courts exercise care regarding sanctions in appeals involving child custody, support, or visitation. *Ellis v. Ellis*, 420 S.W.3d 528, 529 (Ky. App. 2014) (citing *Galloway v. Pruitt*, 469 S.W.2d 556, 557 (Ky. 1971)). But Courts do not become advocates for one side and create arguments for a party who fails to advance what could be deemed her cause.

Here, as Cole declined to file a responsive brief and proffer argument, all three options under the RAPs have merit. First, White's statement of facts and argument appear correct. Second, his arguments appear to sustain a reversal. And third, Cole's failure appears to confess the error of the Family Court, which awarded her sole custody where she never sought it. Without any comment to the contrary by Cole, we have no basis to uphold the Family Court's modification of the parties' long-term, joint custody agreement. We have no reason to believe that Cole wanted sole custody or that she believed that removal of White's custody would be in the best interests of Child.

### III. Modification of Custody

Having reached this conclusion, we need not address at length White's argument regarding the Family Court's modification of custody. The relevant inquiry under Kentucky Revised Statute ("KRS") 403.340 is whether there has been a change in the circumstances of the child or custodian and then whether the modification of custody is in the best interests of the child. That statute also requires an analysis of the factors for an initial award of custody under KRS 403.270(2). In addition, this inquiry is subject to the provisions of KRS 403.340(5), which creates a rebuttable presumption that it is in the best interests of the child for the parents to have joint custody and share equally in parenting time.

In this case, White argues, without contradiction, that Cole never sought a change of the long-standing joint-custody agreement. Rather, the only question before the Family Court at the hearing on February 9, 2024, concerned Cole's motion to modify timesharing and White's motion to change custody. As a result, the Family Court improvidently granted sole custody to Cole, as she never requested that relief.

Furthermore, the Family Court's findings do not directly address any of the statutory factors under KRS 403.340 or KRS 403.270. This Court does not have the responsibility to search the record to determine if it contains sufficient evidence to support the statutory findings for modification of custody. *See Phelps*

-9-

*v. Louisville Water Co.*, 103 S.W.3d 46, 53 (Ky. 2003). Likewise, we view Cole's failure to file a brief as a confession that the Family Court's findings are clearly erroneous and that the modification of custody amounted to an abuse of the Family Court's discretion. *Cherry v. Cherry*, 634 S.W.2d 423, 425 (Ky. 1982).

To be clear, this Opinion merely reverses the Family Court's February 9 and May 15, 2024, Orders. As a result, the parties shall be restored to joint custody and timesharing as set forth under the Family Court's December 7 and December 19, 2022, Orders. As previously noted, White did not file a timely appeal from those earlier orders. Thus, the propriety of those orders is not before this Court. Nothing in this Opinion should be construed as affecting either party's right or ability to seek prospective modification of custody or timesharing.

### IV. Allowing the FOC to Testify without Filing a New Report

White also argues that the Family Court erred by allowing Fitzpatrick to testify without being named as a witness and without filing a new report as required by KRS 403.300(3). He further argues that the Family Court improperly allowed Fitzpatrick to listen to the testimony of Child's therapist and offer opinions to the Family Court based on that testimony. Because we are reversing the award of sole custody on other grounds, these issues do not affect the outcome of this appeal.

Nevertheless, the case will return to the Family Court for future proceedings, and we wish to offer some guidance. The Kentucky Supreme Court has interpreted the due process protections of KRS 403.300(3) as requiring "sufficient notice of the [FOC's] report and its sources and the opportunity to refute them . . . ." *Greene v. Boyd*, 603 S.W.3d 231, 240 (Ky. 2020). "[I]n all cases the family court should strive to allow the parties reasonable time to exercise the ability to challenge the report's sources." *Id.* at 241. *See also Van Gansbeke v. Van Gansbeke*, 700 S.W.3d 263, 267 (Ky. App. 2024).

KRS 403.300(3) requires that a Court-appointed investigator (such as a FOC) provide a report to counsel and to any party not represented by counsel at least ten days before the hearing. That report must include "the investigator's file of underlying data, and reports, complete texts of diagnostic reports made to the investigator pursuant to the provisions of subsection (2), and the names and addresses of all persons whom the investigator has consulted." KRS 403.300. The statute does not specifically require inclusion of the investigator's interviews with the child.

Here, Fitzpatrick issued two prior reports containing the required information: a preliminary report on November 20, 2021, and a supplemental report on March 20, 2023. However, neither party named Fitzpatrick as a witness. Nonetheless, the Family Court allowed Fitzpatrick to testify. The Family Court

-11-

also failed to sever witnesses and instead allowed Fitzpatrick to remain in the courtroom to hear the testimony of Child's therapist and thereafter offer opinions and recommendations based on that testimony. In addition to violation of the separation-of-witnesses rule, Kentucky Rule of Evidence ("KRE") 615, this practice raises significant due-process concerns, as it affects the ability of a party to cross-examine the FOC effectively. Although we are not reversing based on these grounds, the Family Court will need to be mindful of due-process considerations when conducting future hearings.

## V.    Contempt

Finally, White argues that the Family Court erred by finding that he willfully violated orders with respect to timesharing over spring break 2023. Again, we are mindful of the lack of an Appellee's brief from Cole, but contempt is between a Court and a contemnor.

We review the Family Court's imposition of civil contempt for abuse of discretion, but we apply the clear error standard to its underlying findings of fact. *Crandell v. Cabinet for Health & Fam. Servs. ex rel. Dilke*, 642 S.W.3d 686, 689 (Ky. 2022). The Family Court's discretion to impose sanctions for contempt is by no means unlimited, and this Court should not apply a deferential standard of review. *Cabinet for Health & Fam. Servs. v. R.C.*, 661 S.W.3d 305, 316 (Ky. App. 2023).

In *Cabinet for Health and Family Services v. J.M.G.*, 475 S.W.3d 600

(Ky. 2015), the Kentucky Supreme Court defined contempt as "the willful

disobedience toward, or open disrespect for, the rules or orders of a court." *Id.* at

610 (quoting *Poindexter v. Commonwealth*, 389 S.W.3d 112, 117 (Ky. 2012) and

*Commonwealth v. Burge*, 947 S.W.2d 805, 808 (Ky. 1996)).   All Courts have the

authority to sanction contempt and to insist upon respect for its processes and

compliance with its rulings and judgments. *Id.* at 611 (citations omitted).  Thus,

the power of Courts to punish contempt is implicit in the judicial function, and it

"is a necessary and integral part of the independence of the judiciary, and is

absolutely essential to the performance of the duties imposed on them by law." *Id.*

at 611 (citations omitted).

In *Commonwealth, Cabinet for Health and Family Services v. Ivy*, 353

S.W.3d 324 (Ky. 2011), the Kentucky Supreme Court further discussed the

standard of proof for civil contempt:

> In a civil contempt proceeding, the initial burden is on
> the party seeking sanctions to show by clear and
> convincing evidence that the alleged contemnor has
> violated a valid court order. *See, e.g.*, *Roper v. Roper*,
> 242 Ky. 658, 47 S.W.2d 517 (1932).  If the party is
> seeking compensation, it must also prove the amount.
> Once the moving party makes out a *prima facie* case, a
> presumption of contempt arises, and the burden of
> production shifts to the alleged contemnor to show,
> clearly and convincingly, that he or she was unable to
> comply with the court's order or was, for some other
> reason, justified in not complying. *Clay v. Winn*, 434

-13-

S.W.2d 650 (Ky. 1968). This burden is a heavy one and is not satisfied by mere assertions of inability. *Dalton v. Dalton*, 367 S.W.2d 840 (Ky. 1963). The alleged contemnor must offer evidence tending to show clearly that he or she made all reasonable efforts to comply. *Id.* If the alleged contemnor makes a sufficient showing, then the presumption of contempt dissolves and the trial court must make its determination from the totality of the evidence, with the ultimate burden of persuasion on the movant.

*Id.* at 332.

In this case, the Family Court found White in contempt for both of his violations of the timesharing schedule for Christmas 2022 and spring break 2023. The Family Court specifically found that White "had no reason for withholding the child at Christmas – he simply disagreed with the Court's schedule and took it upon himself to make adjustments, as he has done throughout this litigation." Order Modifying Custody, p. 4, ROA at 1423. White himself does not contest the Family Court's finding that he willfully violated the schedule at Christmas 2022. Thus, we have absolutely no basis to disturb this finding.

Rather, White only contends that his violation of the spring break schedule was due to circumstances beyond his control. As previously discussed, White requested a modification to accommodate a planned cruise. The Family Court specifically denied his request twice. Nevertheless, White took Child on the cruise anyway, and he advised Cole that he would be returning the Child at 5:00 p.m. on Monday, April 3 – eight hours late. However, the cruise ship was detained

-14-

by Homeland Security on its return to Los Angeles. White testified that he and Child missed the return flight as a result, causing further delay in returning Child.

As the Family Court noted, White took Child on a cruise that caused him to be late in returning Child for the scheduled spring break timesharing with Cole. And the Family Court had previously denied White's requests to accommodate that planned trip. Even if the additional delay was beyond White's control, the Family Court was entitled to consider White's prior conduct to determine that he willfully violated the timesharing schedule. Under the circumstances, we cannot find that the Family Court clearly erred in finding that White willfully violated the Court's orders or abused its discretion by imposing sanctions for civil contempt.

## VI. Conclusions

Accordingly, we affirm the February 19, 2024, Order of the Jefferson Family Court holding White in contempt. However, we reverse February 19 and May 15, 2024, Orders to the extent that they modified the prior award of joint custody and granted sole custody to Cole. We remand this matter for the Family Court for entry of a new order reinstating the prior joint custody and timesharing orders.

ALL CONCUR.

-15-

BRIEF FOR APPELLANT:                    NO BRIEF FOR APPELLEE.

Jason A. Bowman
Louisville, Kentucky